UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JIMMY BENCOSME<br><br>*Plaintiff*,<br><br>v.<br><br>METRO-NORTH RAILROAD COMPANY.<br><br>*Defendant.* | No. 3:22-cv-01430 (OAW) |

### ORDER DISPOSING OF MOTIONS IN LIMINE

Plaintiff Jimmy Bencosme ("Mr. Bencosme" or "Plaintiff") brings this action pursuant to the Federal Employers Liability Act ("FELA") 45 U.S.C. § 51 *et seq.*, alleging damages against Defendant Metro-North Railroad Company ("MNR" or "Defendant") for personal injuries he suffered while employed by MNR on September 13, 2021. Defendant denies it was negligent and disputes the nature and causation of Plaintiff's injuries.

Plaintiff moved: **(I.)** to exclude evidence or argument which it asserts would violate the collateral source rule and Federal Rule of Civil Procedure 403, including any mention of Railroad Retirement Board ("RRB") sickness or disability benefits, Metropolitan Transportation Authority ("MTA") disability benefits, MetLife Accident/Sickness Benefits, and MNR Sick Leave Benefits, ECF No. 43; and **(II.)** to admit statements made by MNR's employees, supervisors, and/or managers, as admissions by a party opponent pursuant to Federal Rule of Evidence 801(d)(2)(D) and to allow certain witnesses to be asked

1

leading questions.[1]  ECF No. 24.  Defendant moved: **(III.)** to limit testimony from Plaintiff's treating physician regarding the permanency of Mr. Bencosme's injuries and **(IV.)** to preclude argument regarding safer alternative methods.  ECF Nos. 32, 41.

However, within his proposed jury instructions submitted on September 12, 2024 (at ECF No. 50), Plaintiff now "withdraws his claim for past wages and benefits," and thus "withdraws his Motion *In Limine* re: Collateral Source Benefits."  He also "withdraws his claim that Metro-North should have provided safer alternatives."  This renders moot the first and fourth request raised within the various motions in limine, leaving only (as now renumbered by the court): **(I.)** Mr. Bencosme's request to ask leading questions of the MNR employees, and **(II.)** MNR's request to limit medical testimony as to the permanency of Mr. Bencosme's injuries.

Having carefully reviewed the parties' filings, the court addresses each of these remaining two claims.

## I. DEFENDANT STATEMENTS

### A. Party Opponent Statements

Except for limited exceptions, hearsay is not admissible.  Fed. R. Evid. 802. However, certain statements made outside of the trial or hearing wherein they are offered for the truth of the matters asserted do not constitute hearsay.[2]  *See* Fed. R. Evid. 801. For example, a party opponent's out-of-court statements (and statements attributable to that party opponent) are not hearsay when they are offered against that party opponent.

---

[1] Plaintiff's arguments to admit such statements as non hearsay are raised in a bench memorandum (ECF No. 24) filed immediately after a motion in limine (ECF No. 23).  For clarity of the record, the court construes Plaintiff's ECF No. 43 as supplanting ECF No. 23.  Thus, the court disregards ECF No. 23 and limits its review only to those motions so described above.
[2] The Federal Rules of Evidence speak of exclusions and exceptions.  Statements falling under Rule 801(d) are not hearsay while statements that constitute hearsay might fall under some exception, such as those listed in Fed. R. Evid 803.

Fed. R. Evid. 801(d)(2).  Statements of (or attributable to) a party opponent are admissible as substantive evidence of the fact asserted therein.  *Spiegel v. Schulmann*, 604 F.3d 72, 82 (2d Cir. 2010).  Such statements are not barred by the rule against hearsay because a party cannot credibly claim that its own statement should be excluded because it was not made under oath or subject to cross-examination, and also because that party typically is present to explain the content of the prior statement at issue.  Thus, Rule 801 embodies the familiar refrain "what you say can be used against you in a court of law."

Even if presumptively reliable, not every party opponent's statement is admissible; for example, the statement of a party-opponent's agent might be inadmissible if that statement was not made within the scope of employment, or if it did not relate to a matter within the scope of such employment.  *See, e.g., Northern Oil v. Socony Mobil Oil Co.*, 347 F.2d 81, 84–85 (2d Cir. 1965).  In this case, the parties have narrowed their dispute to statements by current and former MNR employees, and the limits as to the scope of what agents can or cannot say at trial, but they fail to offer any specific examples of anticipated testimony the admissibility upon which they would like the court to rule.  Therefore, a discussion of agency principles is necessary.

Traditionally, a statement of an agent or employee as to a matter within the scope of their employment and made within that relationship is an admission of their employer. Fed. R. Evid. 801(d)(2)(D).  Embedded within that principle are three requirements.  First, an agency or employment relationship must have existed.  Second, the statement must have been made during that employment relationship.  Third, the statement must concern a matter within the scope of the agency or employment.  *Pappas v. Middle Earth Condo.*

3

*Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992).  Each requirement must be established by a preponderance of the evidence.  Fed. R. Evid. 104(a).

The phrase "concerning a matter within the scope of [] employment" is broad.  *See Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 231 (6th Cir. 1990), *In re Aircrash in Bali, Indonesia*, 871 F.2d 812, 816 (9th Cir. 1989).  A statement does not need to be within the scope of an employee's agency so long as it is related to (or concerns) a matter within the scope of the agency.  5 Weinstein's Federal Evidence § 801.33 (2024); *see also* Restatement (Third) of Agency § 7.07 (2006).  Indeed, the law construes actions and statements to be within the scope of employment "where the employee's purpose, however misguided, is wholly or in part to further the master's business." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 746 (1998) (applying agency principles).  Thus, so long as the employee sought to further the interests of MNR and the offered statements are relevant to the ultimate issue to be decided, statements by its agents will be admitted.

Mr. Bencosme intends to offer statements made by his "co-employees, supervisors or managers about what they observed, said, and did in the course of their own employment," Pl. Bench Mem. 1–2, ECF No. 24, but he stops short of providing even a single specific example of any such statements, other than to repeat that they will "involve facts obtained and observed during the course of the co-employees' employment."  *Id.* at 2.  For its part, MNR points out that Plaintiff "does not specify which statements he intends to offer," Def. Resp. to Pl. Bench Mem. 2, ECF No. 35, but it also fails to point to any specific statements or anticipated testimony that it asks the court to deem inadmissible, other than insofar as it notes that "non-management coworker statements" generally are inadmissible.  *Id.* at 3.

MNR argues statements admitted pursuant to Rule 801(d)(2)(D) should be limited to those regarding "matters over which [the declarant] has the authority to take action." ECF No. 35, at 3 (citing *Orsaio v. New York State Dep't of Corr. & Cmty. Supervision*, No. 22-596, 2023 WL 3410554 (2d Cir. May 12, 2023) (summary order), *Montague v. Sodexco, Inc.*, No. 3:15-cv-00972 (MPS), 2017 WL 4476969 (D. Conn. Oct. 6, 2017)).[3] But as Plaintiff argues in reply, many of Defendant's citations are to employment discrimination cases. *See, e.g., Orsaio*, 2023 WL 3410554 (summary order). Although the decision-making authority of the declarant to hire, fire, promote or demote may be critical in employment cases in which the statement deals with those types of decisions, no similar requirement exists in other contexts. *Cruz v. Farmers Ins. Exch.*, 42 F.4th 1205, 1213 (10th Cir. 2022); *see* 5 Weinstein's Federal Evidence § 801.33 (2024). Relatedly, the employee's station within the organization is not relevant to the Rule 801(d)(2) analysis. *McDonough v. City of Quincy*, 452 F.3d 8, 21 (1st Cir. 2006); *see Mister v. Northeast Ill. Commuter R.R. Corp.*, 571 F.3d 696, 698–99 (7th Cir. 2009). Therefore, it is of no moment that certain employees may or may not be supervisors with authority to act – their testimony could be relevant to the ultimate issue all the same.

It also bears noting that "[E]mployee statements are liberally admitted under Rule 801(d)(2)(D) due to an assumption that an employee is usually the person best informed about certain acts committed in the course of his employment." *Lasnick v. Morgan*, No. 3:10-cv-00345 (JCH), 2011 U.S. Dist. LEXIS 144835, *9 (D. Conn. Dec. 15, 2011)

---

[3] The court gently reminds the defendant that citations to cases decided by summary order should reflect the same. Rulings by summary order do not have precedential effect. *See* Local Rules and Internal Operating Procedures of the Second Circuit 32.1.1(a) ("Rulings by summary order do not have precedential effect."); *see also* Hoefer v. Bd. of Educ. of the Enlarged City Sch. Dist., 820 F.3d 58, 65 (2d Cir. 2016) (rejecting reliance on an unpublished summary order because "an unpublished summary order . . . is not precedential").

(quoting *Pappas*, 963 F.2d 537) (internal quotation marks omitted).  Whether the *weight* attributed to the statement differs between a supervisor and non-supervisory employee is a matter to be determined by the jury.

These considerations favor the admissibility of certain statements made by supervisory and non-supervisory employees alike so long as the statement concerns a matter within their employment.

This does not mean the Plaintiff will have free rein.  Defendant correctly points out that the Rule does not render admissible any statement whatsoever by any employee.  There are certainly limitations and the Plaintiff's vague briefing fails to offer the court guidance as to what testimony he will offer.  For example, the court will not permit the Plaintiff to present "mere gossip" and mask it as fact.  See *U.S. v. Southland Corp.*, 760 F.2d 1366, 1376 n.4 (2d Cir. 1985), *Litton Systems, Inc. v. American Tel. and Tel. Co.*, 700 F.2d 785, 816–17 (2d Cir. 1983).  Nor will the court permit Plaintiff to offer statements in violation of Federal Rules of Evidence 401, 402, or 403.  The court further cautions Plaintiff that Rule 801(d)(2) lists only specifically enumerated types of statements by party opponents which fall outside of otherwise inadmissible hearsay evidence.

At this juncture, it is unclear what evidence will be offered for admission, as the parties offer only bench memoranda and not motions in limine as to any specific anticipated testimony.  The court invites the parties to identify any specific areas of testimony or specific portions of trial exhibits upon which they seek a pretrial ruling on their admissibility pursuant to Rule 801(d)(2)(D).  This would tend to enhance the efficiency of the jury trial by avoiding unnecessary sidebar discussions, and it also would allow the parties to properly redact any exhibits they intend to offer as evidence.

### B. Leading Questions

Plaintiff's memorandum closes with notice of his intent to ask leading questions of adverse witnesses called by Mr. Bencosme. *See* Pl. Bench Mem. 3, ECF No. 24. MNR seeks to limit such leading questions to only MNR's "current supervisors and managers," Def. Resp. to Pl. Bench Mem. 3, ECF No. 35, but not to other employees, *id.*

The court has the discretion to allow (or to prevent) leading questions posed to an adverse party. *See United States v. Hall*, 165 F.3d 1095, 1117 (7th Cir. 1999). A hostile witness is one who is evasive or uncooperative during examination, or a person who sympathizes with an opponent's case. *See* Fed. R. Evid. 611(c). Parties may ask leading questions of hostile witnesses who sympathize with the opponent's case. *United States v. Wiley*, 846 F.2d 150, 156 (2d Cir. 1988). Plaintiff seeks to declare as hostile all present and former MNR employees, whereas Defendant seeks such designation to be limited to only current MNR supervisors and managers, further noting that only Mr. Wood falls within this category among the witnesses likely to be called by Plaintiff (a statement not later disputed by Plaintiff). Both parties cite to *Torres v. Metro-N. R.R. Co.*, 2023 WL 2387100 (S.D.N.Y. Mar. 7, 2023), and neither it nor Plaintiff's memorandum offers sufficient support for the court to adopt Plaintiff's position that witnesses such as Mr. Collins and Mr. de Hostos (and others who are not currently MNR management) should be asked leading questions on direct examination by Plaintiff, at least without more robust briefing on this issue prior to the pretrial conference. However, the court hereby finds that Plaintiff may ask leading questions of Mr. Wood.

## II. <u>Testimony Regarding Permanence of Bencosme's Injuries</u>

Defendant moves in limine to preclude the Plaintiff's treating physicians from testifying at trial regarding any permanency of Bencosme's injuries or the need for any future medical treatment. The court notes at the outset that Plaintiff avers that counsel will not illicit testimony regarding future medical treatment or the need for future medical treatment.[4] He adds that he will not seek testimony regarding the permanency of his injury through Dr. Haywood.[5] ECF No. 36, at 5. Thus, the part of the motion relating to the same is denied as moot and without prejudice. Defendant is free to resubmit its motion should it become necessary.

What is left for the court to decide is whether the Plaintiff may elicit testimony concerning the permanency of his injuries through Dr. Luchini. As previously discussed, Mr. Bencosme claims damages stemming from an on-the-job injury alleged to have occurred on September 13, 2021, when a coworker lost his grip on a piece of equipment the pair were lifting together while working for Metro-North. Mr. Bencosme alleges the incident injured his back. He sought treatment from Dr. Luchini on September 27, 2021, and intermittently thereafter.

MNR contends that Plaintiff did not sufficiently disclose any permanency opinions to be offered by Dr. Luchini. While conceding that "treating physicians generally are not required to provide written reports pursuant to Fed. R. Civ. P. 26(a)(2)(B)," it argues "the party intending to call the treating physician still must disclose a sufficient summary of facts and opinions to which the witness is expected to testify" such that MNR can prepare

---

[4] Plaintiff secures his right to elicit such testimony should Defendant open the door to such testimony.
[5] With the same caveat as mentioned *supra*, at n.4.

8

its defense.[6]  *Benn v. Metro-North Commuter R. Co.*, No. 3:18-cv-0737 (CSH), 2019 WL 6467348, 2019 U.S. Dist. LEXIS 207052, at *12 (D. Conn. Dec. 2, 2019).

A foundational purpose of Federal Rule of Civil Procedure 26(a) is to promote fairness by ensuring that parties receive adequate notice of potential witnesses and the information they possess.  *See* Fed. R. Civ. P. 26, 1993 Advisory Committee Note.  The Rule facilitates transparency and eliminates surprise.  *Rodriguez v. Vill. of Port Chester*, 535 F. Supp. 3d 202, 215 (S.D.N.Y. 2021), *Kaufman v. Amtrak*, No. 3:02-cv-1700 (PCD), 2004 WL 78148, 2004 U.S. Dist. LEXIS 414, *4 (D. Conn. Jan. 15, 2004).  It also enables the parties to comfortably evaluate the evidence that might be presented at trial and to thoroughly discern the respective strengths and weaknesses of their respective cases, while considering whether settlement might be a more advantageous option.  *Cates v. Trs. of Columbia Univ.*, 330 F.R.D. 369, 373 (S.D.N.Y. 2019).

Treating physicians can provide expert testimony pursuant to Federal Rule of Evidence 702 through compliance with Federal Rule of Civil Procedure 26(a)(2)(A).  The proponent must disclose to opposing counsel the identity of any treating physician it may call to present expert testimony at trial, but the Federal Rules of Civil Procedure do not require treating physicians to issue a written report under Rule 26(a)(2)(B) because such physicians generally are not necessarily retained specifically for the purpose of later

---

[6] Mr. Bencosme's Rule 26(a) disclosures indicated that Dr. Luchini would testify "concerning his diagnosis, examinations and course of treatment for the plaintiff, as well as the plaintiff's medical history, prognosis, future medical treatment, extent of disability and causation." *See* ECF No. 32-1, at 3 (Dec. 30, 2022).  His Rule 26(a)(2)(C) disclosures provide that Plaintiff's treating physicians are expected to present evidence "concerning their diagnosis, examinations, and course of treatment for the plaintiff, as well as the plaintiff's medical history, findings, prognosis, recommendations, future medical treatment, extent of disability, medical restrictions, ability to work, and causation.  They are also expected to testify about all matters set forth in their office notes, reports, medical records and physical therapy records.  The plaintiff's treating physicians may also testify as to the nature and extent of plaintiff's injuries and the prognosis for the future, including the need for future treatment and costs associated therewith." ECF No. 36-5, at 2–3 (Aug. 30, 2023).

providing expert testimony in a potential trial later on.  *See Barack v. Am. Honda Motor Co.*, 293 F.R.D. 106, 108 (D. Conn 2013).  "[I]f the witness is not required to provide a written report [under Rule 26(a)(2)(B), the witness's] disclosure must state: (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." *Id.* (quoting Fed. R. Civ. P. 26(a)(2)(C)).  The key to determining the nature of the testimony a treating physician can provide without first providing a written report is based on that physician's "personal knowledge from consultation, examination and treatment of the [p]laintiff, not from information acquired from outside sources."  *Allen v. Koenigsmann*, No. 19-cv-8173 (LAP), 2021 WL 1552771, *1 (S.D.N.Y. Apr. 20, 2021) (quoting *Mercado v. Dep't of Corr.*, No. 3:16-cv-01622 (VLB), 2019 WL 625697, at *4 (D. Conn. Feb. 14, 2019)).

A review of case law from courts within the United States Court of Appeals for the Second Circuit makes clear that they "have not appeared to settle on the precise level of detail required" by the standards set forth in Rule 26(a)(2)(C).  *Wine v. Black*, No. 18-cv-0704 (VAB), 2024 WL 2809200, *6 (D. Conn. May 17, 2024) (citing *Olutosin v. Gunsett*, No. 14-cv-00685 (NSR), 2019 WL 5616889, at *3 (S.D.N.Y. Oct. 31, 2019)).  This court finds *Wine* persuasive.  The "detailed summary" in that case included a note that the testifying physician would discuss "that the plaintiff's injuries caused permanent disfigurement and limitation." *Wine v. Black*, *16.  Here, Mr. Bencosme's disclosure noted that Drs. Luchini and Haywood would testify about "the prognosis for the future" and the "extent of disability."[7]  ECF No. 36-5, pgs. 2–4 (Aug. 30, 2023).  The topic is not a surprise

---

[7] The medical definition of "prognosis" is "[a] forecast of the probable course and/or outcome of a disease." 726000 Prognosis, Stedman's Medical Dictionary.

10

to MNR, and the basis for such anticipated medical opinions has been disclosed.  While Defendant may challenge any medical testimony and the bases for such medical opinions through vigorous cross-examination, this court will not hold Plaintiff to any higher standard than our legal rules require before allowing Plaintiff to present this testimony to the jury.  The finders of fact will not be entirely deprived of this information for failure to state any "magic words."

Enforcing Rule 26 often requires courts to apply a measure of common sense.  *See* Fed. R. Civ. P. 26, 1993 Advisory Committee Note.  In this case, Plaintiff's disclosures certainly fall far short of a written report often submitted by an expert witness, but it is beyond any reasonable question that that well experienced defense counsel (representing a sophisticated defendant) had been provided with ample reason to foresee that Mr. Bencosme's treating physicians might be called to opine on the permanency of any injured he suffered on September 13, 2021, in plenty of time for MNR to have deposed Dr. Luchini in order to glean further meaning, especially considering certain references in Plaintiff's medical record.  *See, e.g.,* ECF Nos. 36-1 at 24 ("the future may need for various modalities of treatment" and "[r]ight now [Bencosme] has essentially reached maximal medical improvement has a permanent injury to his lumbar spine"), at 25 ("I advised that there is a possibility in the future of needing surgery…") 36-2 at 3 ("I advised him that at his age this condition commonly fluctuates with regard to severity and may give him more leg pain from time to time" and "[h]e will not necessarily need surgery only time will tell.").  Some of these records were provided on December 20, 2022, which was long before the March 2024 close of discovery.  *See* ECF No. 12 (Dec. 6, 2023).

11

These considerations are independent of the court's analysis, though they certainly serve to support the court's findings, and the reasons therefor.

Accordingly, Defendant's motion to preclude trial testimony from Dr. Luchini (Plaintiff's treating physician) regarding any permanency of Mr. Bencosme's injuries hereby is denied.

## CONCLUSION

Plaintiff may present statements from party opponent within the boundaries established above, as to the issues raised at ECF No. 24. However, while Plaintiff may ask leading questions of Jason Wood as telegraphed at ECF No. 24, the same is not permitted as to Joseph Collins, Jr. nor as to Reinaldo de Hostos based upon the record as presently exists in this case. Defendant's motion at ECF No. 32 to preclude testimony from treating physician Dr. Michael A. Luchini regarding the permanency of Mr. Bencosme's injuries hereby is **DENIED.**

**IT IS SO ORDERED** at Hartford, Connecticut, this 16th day of September, 2024.

/s/
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE